Buffington *et al. versus* Summit Branch Railroad
Company *et al.*

1. A testator in 1794 directed his debts to be paid "in due and lawful
time," and afterwards directed his executors to sell and convey "the residue
and remainder" of his estate, "and the money arising therefrom to be
applied to pay the debts and legacies above." *Held*, that this did not con-
tinue the charge on his land or its proceeds, and a sale of the land upon a
judgment in a suit commenced after seven years, passed no title.
2. The maxim, "*Stare decisis*," applied.
3. Alexander *v.* McMurry, 8 Watts 504, recognised and distinguished.
Buehler *v.* Buffington, 7 Wright 278, followed.

May 22d 1873.   Before READ, C. J., AGNEW, SHARSWOOD,
WILLIAMS and MERCUR, JJ.
Error to the Court of Common Pleas of *Dauphin county :* No.
72, to May Term 1873.
This was an action of ejectment brought June 2d 1869, by Lee
W. Buffington and Sarah R. his wife, Rebecca M. Robertson,
George G. Wheelock and Margaret his wife, Catharine Robert-
son, Robert H. Robertson, James T. Carter and Mahlon K.
Taylor, against The Summit Branch Railroad Company, Joseph
Anthony and William E. Ray, for a tract of 300 acres of land.
The same title was passed upon in Buehler *v.* Buffington, 7
Wright 278, where the whole facts of the case are given.
This case was tried November 25th 1872, before Pearson, P. J.
Both parties claimed under Daniel Williams, who died on or
about the 9th day of December 1797, on which day his will, dated
May 2d 1794, was proved.
He directed that "all just accounts and demands brought in
against me or my estate, to my executors in due and lawful time,
be paid."
After giving a number of legacies and devising a house and lot
in Philadelphia, he further provided :—
"And respecting the residue and remainder of my estate, in
possession, right or expectancy, I order and empower my executors
hereinafter named, and the survivor of them, to sell and dispose
of the same, at private or public sale, and to make such title-deeds
or conveyances to the buyers as I could do, and the money arising
therefrom to be applied to pay the debts and legacies above.
Then the residue and remainder of my estate I give to my said
daughter Sarah, and son Daniel equally, share alike.
"And I do hereby appoint my aforesaid daughter, Deborah
Field, my daughter Sarah and said son Daniel, to be the executors
to this my last will and testament."
Letters testamentary were issued to all the executors.   Sarah
afterwards married John Moulston.   On the 19th of December

1801, John Field (the husband of Deborah, one of the executors) commenced an action in the Supreme Court against " Sarah Moulston, executrix of Daniel Williams and John Moulston, her husband, and Deborah Field, executrix of Daniel Williams, who survived Daniel Williams, the younger, also executor."

The writ was returned, " Served on Deborah Field and *nihil habet* as to the other party." On the 29th of December 1801, "judgment by consent of Mr. Brinton, counsel for Deborah Field, 793*l.* 4*s.* 6*d.*" In September 1803, a scire facias on this judgment was issued by John Field against " Sarah Moulston and husband and Deborah Field, executors of Daniel Williams, and returned " Made known to Sarah Moulston." On the 29th of July 1807, the death of Deborah Field and the renunciation of Sarah Moulston were suggested, and Clayton Earl and Thomas Mitchell, administrators d. b. n. c. t. a., were substituted as defendants. The case was referred to arbitrators, who, on the 13th of January 1808, awarded for plaintiffs 1080*l.* 6*s.* 1*d.*, and " do not find any assets." After exceptions to the award it was confirmed, and judgment entered on it April 2d 1808.

Under a testatum execution to Dauphin county, the land was returned sold to John Field for $212.19, October 15th 1808, and deed made to him by the sheriff, and acknowledged June 1st 1809. The plaintiffs by a number of intermediate conveyances derive their title from John Field

The defendants gave in evidence deed December 1st 1806, from John Moulston and Sarah his wife to George Moulston, she conveying as executrix for all the lands of Daniel Williams, including the tract in dispute; and reconveyance, September 29th 1807, to Sarah Moulston; devise April 10th 1833, of the premises, by Sarah Moulston to her children John and Deborah. Deed September 26th 1835, John and Deborah Moulston to Henry Buehler. Patent March 29th 1837, to Henry Buehler.

The defendants then gave in evidence the record of the suit reported in 7 Wright 278.

Also record of the trial, March 23d 1863, when plaintiffs suffered a nonsuit, and evidence deducing the title from Buehler, after the decision of the former case, to the present defendants.

Judge Pearson, amongst other things, charged :—

* * * " We come now to a much more difficult and important branch of this case : had the debt due to John Field by Daniel Williams ceased to be a lien on his land at the time of the sale ? If it had, the sheriff's deed confers no title. Prior to the 19th of April 1794, the lands of decedents were, to all intents and purposes, considered chattels for the payment of debts, and the lien thereof was indefinite as to time and extent, but embraced all the real estate of the decedent within the Commonwealth. On that day an act was passed limiting the lien as to time, but not as to extent.

[Buffington *v.* Summit Branch Railroad Co.]

The statute requires that a demand shall be made, or an action for the recovery of the debt be commenced, and duly prosecuted against the executor or administrator, within the period of seven years from the death of the debtor ; or where the debt is not payable, a copy filed in the office of the prothonotary of the county where the lands lie, within that time. This act, with a slight alteration, was re-enacted on the 4th of April 1797. The original law was in force when Daniel Williams made his will, and therefore his debts came within its provisions.

" Was the proceeding of John Field, against the executors of Daniel Williams, in time to keep up the lien given by law against the estates of decedents ?   *   *   *   Everything connected with the case was a nullity, and when a regular judgment was obtained, the lien on the land was gone twice over. We considered on the former trial that the claim against the land was kept alive by the provisions of Daniel Williams's will, but the Supreme Court decided that this debt was not brought against the estate, ' in due and lawful time,' and therefore could not be paid. That decision is conclusive on us, and our instruction is binding on you. We therefore say, that Field's judgment was not a lien on this land, consequently the plaintiffs have no title, and cannot recover. Their whole title depends on the judgment, and the sheriff's deed under it.   *   *   *   We consider that every question of any moment connected with this title, was settled by the Supreme Court on the former trial. On the faith of that decision, the land passed through many hands, at very high prices, and purchasers should feel that they could rely on the decisions of our court of the last resort, either in buying or improving. *Stare decisis* is a very important principle in regard to land titles, and one to which the good of the country requires that we should yield, whether it coincides with our original opinions or otherwise."   *   *

The verdict was for the defendants.

The plaintiffs took a writ of error and assigned the charge for error.

*F. W. Hughes* and *Hamilton Alricks*, for plaintiffs in error.— The order by the testator to sell this land was a conversion, and the descent was broken ; there is no limitation of charges against personal estate of a decedent : Dundas's Appeal, 14 P. F. Smith 325 ; Brown's Appeal, 3 Casey 62. A sale under judgment against the personal representatives passes a good title : Leiper *v.* Castner, 10 P. F. Smith 177 ; Baldy *v.* Brady, 3 Harris 103 ; Willing *v.* Peters, 7 Barr 287.

*J. W. Simonton*, for defendants in error, cited Buehler *v* Buffington, *supra ;* Miller & Bowman's Appeal, 10 P. F. Smith 407.

[Buffington v. Summit Branch Railroad Co.]

The opinion of the court was delivered, July 2d 1873, by
SHARSWOOD, J.—A former ejectment for the same tract of land
as that now in controversy was brought by writ of error before
this court in 1862, and the title of the present plaintiffs was de-
cided to be bad by a solemn adjudication and without a dissent:
Buehler's Heirs v. Buffington, 7 Wright 278. The judgment of
the Court of Common Pleas of Dauphin county was reversed,
and a *venire facias de novo* awarded. When the cause had been
remitted and was again ordered for trial in that court March 23d
1863, the plaintiffs suffered a nonsuit. The defendants then sold
their interest to others, and it was finally vested in the Summit
Branch Railroad Company. Six years after the nonsuit in the
first ejectment, the present suit was commenced. The main
question in that controversy, and the decision of which we are
now asked to reconsider, arose upon the construction of the will
of Daniel Williams. The determination cast no doubt whatever
upon the principle so well settled in Alexander v. McMurry, 8
Watts 504, and other cases which have followed in its wake, that
when executors are directed by will to sell land for the payment
of debts, a trust is created, and the limitation of the lien of debts
upon the land of a decedent under the Acts of Assembly has no
application. On the contrary that principle was distinctly recog-
nised and re-affirmed, but the decision was rested on the peculiar
phraseology of the will. It was held that the clause which directed
that the proceeds of the sale should be appropriated to pay all
just demands brought to the executors "in due and lawful time,"
distinguished this case from all others, and constituted it an excep-
tion. "Surely," said Mr. Chief Justice Lowrie, "this clause is suf-
ficient to show that the testator did not intend to supplant the
temporary charge of the law by a permanent one of his own crea-
tion, for he refers to the 'lawful time;' and moreover that is not
mere formal language. He may not have known or thought of
any special legal limitation, but his language shows that he was
willing to trust to the law for a proper one. He dedicated his
land for his debts just as the law dedicated it. We think, there-
fore, that the devise does not reject but retains the limitation in
the Act of 1794 (repeated in 1797), and that this debt had ceased
to be a lien or charge on the land at the time of the first effective
process for its recovery, and consequently that the sale under the
judgment passed no title to the purchaser."

If there is any case to which the principle of *stare decisis*
should be sternly applied, this is that case. Even if convinced
that the former determination was clearly wrong, no court ought
ever to overrule its own decision upon the very same title upon
the faith of which purchasers have invested their money; more
especially ought this rule to be adhered to when the decision is

founded upon the construction of the words of a will, and forms no precedent except in a question arising upon a will in precisely the same language. If any counsel desirous of securing the legal limitation of the lien of debts, but at the same time of ordering a sale and creating a trust, should have followed the precise words of the will of Daniel Williams to accomplish the intention of the testator, his client, he would have had the best reason in the world to believe that he was safe. In every point of view it would be palpable injustice not only to the purchasers now before us, but to the profession and the public, to reconsider and overrule the former decision of the court. We affirm this judgment, on the authority of Buehler's Heirs *v.* Buffington.

Judgment affirmed.