# Northampton County *versus* The Lehigh Coal and Navigation Company.

1. The Act of April 8th 1873, did not design to change the course of judicial construction of general tax laws, but to repeal certain special tax laws.

2. A railroad company owned and occupied by freight and passenger depots: these being necessary for the enjoyment of the franchises of the company were not liable to taxation.

3. The provisions of the 10th article of the new Constitution providing that taxes shall be uniform, &c., and avoiding laws exempting certain property, &c., have no greater effect than the Act of 1873.

March 16th 1874.   Before AGNEW, C. J., SHARSWOOD, MERCUR and GORDON, JJ.   WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Northampton county*: No. 17, to January Term 1874.

This was an amicable action of assumpsit and case stated, filed May 27th 1873, in which the county of Northampton was plaintiff and the Lehigh Coal and Navigation Company were defendants.

The case stated was as follows:—

"The assessor of the Fifth ward, of the borough of Easton, in said county, has returned for taxation for county rates and levies property in the said ward belonging to the defendants and described in the assessment as the 'Depot and Freight House,' and adjoining grounds of the Lehigh and Susquehanna Division Railroad Company, at the valuation specified in the assessment, a copy of which is hereto annexed and made part of this case. * * * The same was conveyed to the Lehigh Coal and Navigation Company by the widow and heirs of William Bixler, deceased, by deed dated the 1st day of December, A. D. 1865.  In said deed it is stated that the 'Lehigh Coal and Navigation Company have recently under the powers and authorities conferred upon said corporation by the legislature of Pennsylvania surveyed and are about to construct a railroad through and over the above-described lot of ground and use the same for railroad purposes.'  The lot is now occupied by the defendants' railroad, commonly known as the Lehigh and Susquehanna Railroad, which passes through it from east to west, and by two frame structures, one a passenger and the other a freight depot, which are described in the assessment a 'Depot and Freight House.'  The defendants were incorporated in pursuance of the Acts of the General Assembly of Pennsylvania, entitled 'An act to improve the navigation of the river Lehigh, passed March 20th 1818, and an act to incorporate The Lehigh Coal and Navigation Company, passed February 13th 1822,' and were authorized to build the said railroad by an act entitled 'An act authorizing the construction of a railroad to connect the North Branch division of the Pennsylvania Canal at or within the borough of Wilkesbarre, with the slackwater navigation of the Lehigh, approved the 13th

day of March, A. D. 1837, an act entitled an act to authorize the Lehigh Coal and Navigation Company to extend their railroad from White Haven to Mauch Chunk, approved March 4th 1863,' and several supplements thereto. * * * The questions for the decision of the court are whether any, and if any, what part of the said property is liable to be assessed for purposes of taxation under the Acts of Assembly for that purpose.

"If the court shall be of opinion that the said lot of ground occupied as aforesaid by the railroad track and as a passenger and freight depot, is liable to assessment for taxation, then judgment to be entered for the plaintiffs, and if not, then judgment to be entered for the defendants, with costs in either case."

The Act of April 16th 1838, sect. 29 (Pamph. L. 525, 2 Br. Purd. 1368, pl. 77), provided that all regular places of stated religious worship, &c., and the grounds annexed, &c., burial-grounds, universities, colleges, academies, school-houses, belonging to any county, &c., or incorporated, &c., by virtue of any law with the grounds, &c., court-houses and jails should be exempted from tax.

The Act of July 2d 1839, sect. 3 (Pamph. L. 576, 2 Br. Purd. 1368, pl. 78), declared that sect. 29 of Act of 1838 meant five acres of land "with the improvements attached to all such religious congregations, universities, colleges, academies, school-houses belonging to any county, borough or school district as aforesaid; and no more than five acres of land with the improvements thereon, attached thereto, shall be exempted from taxation aforesaid."

The Act of February 23d 1866, sect. 4 (Pamph. L. 83), enacts that "the real estate of this Commonwealth shall be exempt from taxation for state purposes: *Provided,* that this section shall not be construed to relieve the said real estate from the payment of any taxes due the Commonwealth, at the date of the passage of this act."

The Act of April 8th 1873, sect. 1 (Pamph. L. 64), provides:—

"That all real estate within this Commonwealth shall be liable to taxation for all such purposes as now is or hereafter may be provided by general laws, excepting only therefrom the classes of property specifically exempted from taxation by the 29th section of the Act of April 16th 1838, as construed by the 3d section of the Act of July 2d 1839, except that the quantity of land thereby exempted shall be and is hereby increased to ten acres instead of five as therein named, also exempting from taxation all parsonages owned by any church or religious society, with the lands attached thereto, not exceeding five acres, also excepting and exempting from such taxation all burial lots exempted by the provisions of the Act of April 5th 1859, * * * and exempting from such taxation all lunatic asylums, alms-houses, poor-houses, houses of refuge, penitentiaries and asylums, schools and hospitals supported by the appropriations annually made thereto by this Commonwealth, to-

gether with the lands attached to the same, and also excepting and
exempting from such taxation all charitable institutions, founded
by charitable gifts or otherwise, the chief revenues for the support
of which are derived from voluntary contributions, together with
the lands attached to the same and all laws and parts of laws in-
consistent with the provisions of this statute be and the same are
hereby repealed: *Provided*, that nothing in this act contained
shall be construed as repealing the 4th section of the act, entitled
'An act to amend the revenue laws of this Commonwealth,' ap-
proved February 23d 1866."

By the 9th Article of the new Constitution it is provided:—

·Sect. 1st. All taxes shall be uniform upon the same class of
subjects within the territorial limits of the authority levying the
tax and shall be levied and collected under general laws; but the
General Assembly may by general laws exempt from taxation public
property used for public purposes, actual places of religious wor-
ship; places of burial, not used or held for private or corporate
profit and institutions of purely public charity.

Sect 2. All laws exempting property from taxation other than
the property above enumerated shall be void.

Sect. 3. The power to tax corporations and corporate property
shall not be surrendered or suspended by any contract or grant to
which the state shall be a party.

The court (Longaker, P. J.) entered judgment for the defendants.

The plaintiff took a writ of error, and assigned for error enter-
ing judgment for the defendants.

*M. H. Jones*, for plaintiff in error.

*H. Green* and *H. D. Maxwell*, for defendants in error.

The opinion of the court was delivered, May 11th 1874, by

SHARSWOOD, J.—We think it very apparent, as well from the
title as the whole scope of the enacting words of the act entitled
" An Act to repeal all laws exempting real estate from taxation,"
approved April 8th 1873, Pamph. L. 64, that its object was not to
change the course of judicial decisions upon the construction of the
general tax laws, but to repeal the large number of special acts
upon the statute book exempting particular properties.     These
special, laws had become a great evil.   In the city of Philadelphia,
houses and lots producing large revenues to the institutions to
whom they belonged, to the extent in value of more than a million
of dollars, were thus by special law relieved from their share of the
local taxes, and the burden proportionally increased on the residue.
It is admitted by the learned counsel of the plaintiffs in error, that
it had been settled in several cases in this court that the words
"real estate" in the Act of April 15th 1834, Pamph. L. 512,

25 P. F. SMITH—30

[Northampton County *v.* Lehigh Coal & Nav. Co.]

entitled "An Act relating to county rates and levies, and township rates and levies," did not comprehend the track, depots, water stations, and other necessary parts of a railroad, which in fact form part of the railroad itself, and without which its duties to the public could not be performed. There is no reason why the same words should receive a more enlarged interpretation in the Act of 1873. As to the Constitution, Art. X., sections 1, 2, 3, it might be enough to say that the assessment in question was made for the year 1873, and the Constitution did not go into operation until January 1st 1874, Schedule, sect. 1; but if it had been in force, it is not easy to perceive that it had any greater effect than the Act of 1873, providing that all special acts exempting property from taxation, other than the property enumerated, shall be void. There is nothing in the provision that all taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax, which at all contravenes the general principle settled by the Supreme Court as to what is real estate within the classification of the tax laws, and that land necessary to the franchise of a railroad corporation is a part of such franchise, and not real estate subject to local taxation under the existing laws.

Judgment affirmed.