HOUSE OF REFUGE v. G. W. SMITH ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF DELAWARE COUNTY.

Argued February 10, 1891—Decided March 2, 1891.
[To be reported.]

(*a*) The House of Refuge of Philadelphia was incorporated by the act of March 23, 1826, P. L. 133, for the purpose of establishing and conducting an institution for the confinement and reformation of youthful delinquents, and was conceded to be an institution of purely public charity.

(*b*) Under the authority of the act of May 13, 1889, P. L. 209, the managers purchased 384 acres of land in Delaware county, and removed the male department thereto. Said land is cultivated by inmates, to the end that they may be trained to agricultural labor; and the sale of the products of the farm defrays a part of the expenses of the institution:

1. The land so used is not income-producing in any proper sense; and being in the actual use of the managers and devoted absolutely to the purposes of the institution, as a part of the plant on and by means of which its reformatory work is carried on, it is exempt from taxation, under the act of May 14, 1874, P. L. 158: Wagner Institute's App., 116 Pa. 555, distinguished.

Before Paxson, C. J., Sterrett, Green, Clark and Williams, JJ.

No. 17 January Term 1891, Sup. Ct.; court below, No. 5 March Term 1890, C. P. in Equity.

To the number and term stated, in the court below, " The

---

*Observe, also, that the wife herself was a party to the deed, the grantee in which was dead:—Rep.

House of Refuge" filed a bill in equity against George W. Smith, collector of road taxes in Thornburg township, and others, averring in substance as follows:

The plaintiff is a corporation duly incorporated by act of March 23, 1826, P. L. 133, for the purpose of establishing and conducting an institution for the confinement and reformation of youthful delinquents. The incorporating act ordained, inter alia, that the managers should provide a suitable building in the city and county of Philadelphia, for the purpose aforesaid, and that the lot of ground, and the buildings to be erected thereon for the use and object of the association, should be free from taxation.

The institution purchased successively two sites in the city of Philadelphia, for the location of its work, and on the one last purchased its work has been carried on since 1872, and no taxes have ever been paid on any portion of its property so used. It is supported by voluntary contributions of charitably disposed persons, and by appropriations made by the city of Philadelphia and the state of Pennsylvania, supplemented to a small extent by the proceeds of the labor of the inmates. The inmates are committed thereto by courts and magistrates, and no charge is made for their support, education and maintenance. They are employed, as part of their training, in various industrial pursuits; and the product of their labor and the income therefrom is devoted wholly to defraying the expenses of the work of the institution. No distinction is made in the reception of inmates on the ground of race or sex, "and the said corporation is a charitable trust open to the public indefinitely, and conducted without a view to corporate or individual profit, and an institution of purely public charity, founded, endowed and maintained by public and private charity."

The act of May 13, 1889, P. L. 209, authorizes the removal of houses of refuge and reformatories for juvenile delinquents, or any department thereof, from cities to rural districts, in either the same or another county, and provides:

"§ 5. All charters, laws, or parts of laws relating to houses of refuge and institutions for the reformation of juvenile delinquents, not inconsistent herewith, shall be equally applicable to them, or any department of them, whether located in the county originally designated by their charter, or removed to another county, in pursuance of section 1 of this act."

In pursuance of said act, the board of managers have purchased a farm of some three hundred and eighty-four acres in Delaware county, and are erecting the necessary buildings thereon for the purpose of removing the boys' department to that situation. One of the most important purposes of this removal is the training of the inmates in agricultural and industrial pursuits. No revenue has been derived from the farm, other than that of the natural increase from the crops put in, of which there has been sold, up to the present time, only so much as amounts to the value of $192, but the expenditure necessary to prepare the ground for its future use, has far exceeded this amount. For the purposes of taxation, for the year 1889, the said tracts of land have been assessed for, and the defendants are about to take measures to collect, road and school taxes thereon. The bill, therefore, prayed for an injunction restraining the defendants from the collection of the taxes and from thereafter assessing the same.

Upon the filing of the bill a preliminary injunction was granted. The defendants afterwards filed an answer which admitted the facts alleged in the bill, and admitted that the buildings used for the purposes and object of the institution, together with the ground annexed to them and necessary for their enjoyment and occupancy, were exempt from taxation; but averred that "it is not alleged that the said buildings and the curtilages immediately adjacent thereto will occupy the whole of the said tract of land; and . . . . . as to so much of said tract of land as is not necessary for the occupation and enjoyment of the said buildings and still remains farm land, even though it may be intended to farm it by the labor of the inmates of the House of Refuge and as part of their industrial training, it would still be subject to taxation."

After a hearing upon bill and answer, the court, CLAYTON, P. J., filed the following opinion:

This is a bill in equity for an injunction to restrain the defendant from collecting certain taxes. The complainants allege that the House of Refuge is a purely public charity, and that the taxes are levied upon a farm necessary for the enjoyment of its franchises.

By agreement of counsel, the case is to be considered as at

issue upon all questions raised by the bill and answer. As no proofs have been submitted, we must take the facts as set out in the answer as the basis of our opinion. As far, therefore, as the court is able to judge, the case is substantially the same as the one recently decided by the Supreme Court: Wagner Free Inst. v. Philadelphia, 116 Pa. 555; s. c. 132 Pa. 612. The question in that case, briefly stated, was whether real estate not occupied by or annexed to the buildings, the revenues of which were devoted to its support, was exempt from taxation? This is the precise question in the case now under consideration.

The claim for exemption rests upon the charter of the institution. It was first chartered by a special act of assembly, passed May 23, 1826, P. L. 133. The act empowered the association to procure a suitable building in the city of Philadelphia, and exempted the same with the "lot," etc., from taxation. The act of May 14, 1874, P. L. 158, was a repeal of the part of the act of 1826 that exempted the real estate from taxation. Its claim for exemption must therefore now rest on the act of 1874. The case above cited, Wagner Free Inst. v. Philadelphia, is decisive of the question against the contention of the complainants. This court decided the same question, in the same way, as early as 1878: Sisters of St. Francis v. Delaware County, 2 Del. Co. R. 149.

The House of Refuge is undoubtedly a purely public charity, but the exemption from taxes, allowed by the act of 1874, can extend no further than the house intended for the confinement or accommodation of its inmates, "with the grounds thereto annexed and necessary for the occupancy (not support) and enjoyment of the same."

The charter requires the association to procure a building in the city of Philadelphia, but the act of May 13, 1889, gave the association authority to purchase a farm in Delaware county, "where the family life and home influence and agricultural and other industrial occupations may be more easily secured." The complainants rely upon the fifth section of that act, which provides: "All charters, laws or parts of laws, relating to houses of refuge, . . . . . not inconsistent herewith, shall be equally applicable to them or any department of them, whether located in the county originally designated by their charter, or

removed to another county, in pursuance of the first section of this act." They hold that the effect of this section was to carry the law exempting the Philadelphia house and "lot," to the farm and buildings recently purchased by them in Delaware county; but it must be borne in mind that the act of 1874 repealed the exempting clause of the act of 1826, and made them subject to the exemption granted by the act of 1874, and, therefore, the act of 1889 could do no more, at best, than carry to Delaware county the exemption named in the act of 1874.

But, even if the original exemption, as named in the act of 1826, is still in force, it must be held only to apply to the buildings and so much ground annexed as is necessary for their enjoyment. Tax laws are construed liberally in favor of the commonwealth, and strictly against all persons claiming exemption from a common burden. It would be a most liberal construction of the words in the charter, "lot of ground necessary for the enjoyment of a building," to include in the "lot" three large farms, of over three hundred and eighty-four acres of land, with farm houses, barns, stables, etc. The words "lot of ground," were never intended to have such an extended signification.

I am of opinion that the house or houses intended for the confinement or actual occupancy of the inmates of the House of Refuge, with the grounds necessary for the enjoyment of the same, will be free from taxation under the act of 1874, but the farm lands and buildings are taxable.

Let the injunction be dissolved and the bill be dismissed with costs.

—A decree having been entered, dismissing the bill at the costs of the plaintiff, the plaintiff took this appeal, specifying that the court erred:

1. In decreeing the dismissal of plaintiff's bill.

2. In not enjoining the defendants as prayed in the bill.

*Mr. N. Dubois Miller*, for the appellant:

1. Exemption from taxation is claimed under the general law of the state exempting institutions of purely public charity: § 1, article IX. of the constitution; act of May 14, 1874, P. L. 158; Philadelphia v. Women's Christian Ass'n, 125 Pa. 572; Philadelphia v. Penna. Hospital, 134 Pa. 171; North-

ampton Co. v. Lafayette College, 128 Pa. 132. The court below utterly misapprehended the case presented for its consideration. The real question is simply whether the exemption is confined to the buildings and so much land thereto attached as may be necessary for their occupation and enjoyment, or whether the farm of 384 acres, owned, used and occupied as the boys' department of the House of Refuge, is wholly exempt. The statement that Wagner Free Inst. v. Philadelphia, 132 Pa. 612, decides the precise question in the present case, is wholly without foundation, as will be apparent on an examination of the facts in the case cited.

2. The institution is admitted by the pleadings, in the case at bar, to be a farm school, and it can be legally said that the whole farm is "in actual use and occupation for the purposes" of such a school. That the inmates provide a part of their support by labor upon the farm, does not render the institution any less a charity: Armstrong Co. v. Overseers, 2 Mona. 316. Again, under the express provision of the act of May 13, 1889, P. L. 209, the clause of exemption in the act of incorporation is to be applicable to the department removed to this property, and that clause does not limit the dimensions of the "lot of ground" on which the buildings are erected. This provision in the act of 1889 is not a special law granting exemption, but simply a saving clause, to the effect that taking the benefit of that act should not be construed to affect the right of exemption conferred by the act of incorporation.

*Mr. Horace L. Cheyney,* for the appellees:

1. The only question that is raised under the act of May 14, 1874, P. L. 158, is whether the word "institution," as used therein, means a farm of three hundred and eighty-four acres, or simply the institution buildings. That word has never been interpreted by this court, but similar words used in the same act have been; for example, the word church: Church of Our Saviour v. Montgomery Co., 10 W. N. 170; the word college: Northampton Co. v. Lafayette College, 128 Pa. 132. We are willing to concede that all real estate within the general enclosure surrounding the buildings is exempt, but deny that the limits of the enclosure can be extended to an abnormal degree, so as to include nearly four hundred acres of farm land, upon

the theory that, as it is to be cultivated by the inmates, the whole tract is a "farm school." Armstrong Co. v. Overseers, 2 Mona. 316, does not seem to have the slightest application. The point here raised was not considered. Both that case and Cumru Tp. v. Directors, 112 Pa. 264, were correctly decided, upon their facts, but they are special cases, and do not furnish a rule for the general interpretation of the act of May 14, 1874. That act exempts only sufficient ground for the reasonable enjoyment of the buildings: Delaware Co. v. Sisters of St. Francis, 2 Del. Co. R. 148.

2. In Thiel College v. Mercer Co., 101 Pa. 530, the identical question here presented was discussed, and a tract of thirty-seven acres attached to a college was held taxable. The only difference between the present case and Wagner Free Inst. v. Philadelphia, 132 Pa. 612, is that the lands in that case were not attached to the institution, while here they are contiguous. The fact that this farm is to be cultivated by the labor of the inmates, does not alter the case. It is just as much a source of revenue as if it were tilled by hired labor, or by a tenant paying a money rental. The proviso in the act of 1874, although declared unconstitutional as a taxing law, in Sewickley Bor. v. Sholes, 118 Pa. 165, nevertheless shows the intention of the legislature to confine the exemption to property which is not a source of revenue, and the act has always been so construed: Northampton Co. v. Lafayette College, 128 Pa. 132. It is worthy of notice that in the act of 1874 the exemption in the case of jails and court-houses extends, without qualification, to the "grounds thereto annexed," while in the case of charities it is provided, not only that the grounds must be annexed to the institution, but also that they must be necessary for the enjoyment and occupancy of the same. This provision shows conclusively that the word "institution" was used as referring to the necessary buildings, and not in any other sense. If the plaintiff's position is correct, there is nothing to prevent its absorbing half the lands of the township, and holding the same free from all taxation.

3. The exemption from taxation granted by the act of March 23, 1826, P. L. 133, incorporating the plaintiff, has been repealed. The right to alter, amend or repeal the act was reserved in § 7, and the effect of the act of April 8, 1873, P. L.

Opinion of the Court.

64, was to repeal all such special exemption laws : Wagner
.Free Inst. v. Philadelphia, 132 Pa. 612. Had this not been
the case, § 2, article XIX. of the constitution, and the act of
May 14, 1874, P. L. 158, would have had the same effect. But,
even assuming that the exemption granted by the act of 1826
is still in force, it does not benefit the plaintiff, as it was ex-
pressly confined to real estate in Philadelphia; and if the
provisions of § 5, act of May 13, 1889, P. L. 209, could be
construed as extending it to lands in Delaware county, such
construction would make that section unconstitutional and
void. The argument that this is not a special act of exemption,
but a saving clause preserving the exemption already granted
by the act of 1826, and yet giving that exemption a new and
greater force and scope than it had originally, is so clearly
fallacious as to require no answer. Moreover, the act of 1826
exempts only the buildings of the House of Refuge and such a
lot of ground as is necessary for their enjoyment, and if the act
is in force in Delaware county, the extent of the exemption is
identical with that in Philadelphia.

Opinion, Mr. Justice Williams :

The question in this case is mainly one of definition. What
.is the House of Refuge ? An examination of the several acts
of assembly relating to it makes it very clear that it is not
merely a house with the necessary curtilage appurtenant to it,
but a philanthropic establishment, an institution organized and
maintained for the reformation of juvenile delinquents. Ex-
perience has shown that this work can ordinarily be better ac-
complished by giving to the unfortunate children suitable
occupation of mind and body than by confinement in idleness.
Such training of mind and muscle as is calculated to prepare
the individual for self-support, is therefore part of the reforma-
tory process. The work-shop, the schoolhouse, the garden,
and the field, are therefore as truly a part of the plant as the
place of detention itself.

What was said in Northampton Co. v. Lafayette College,
128 Pa. 132, may, with a slight modification, be applied to this
case. The House of Refuge, looked at with reference to its
reformatory work, consists of the superintendents, inmates,
teachers, and keepers ; but, viewed with reference to its prop-

erty and the question of taxation, the buildings and grounds legitimately used in its work are the House of Refuge. Originally this institution was confined to an enclosure in the city of Philadelphia, which had become too narrow and confined to enable the institution properly to care for the numbers committed to its care. The act of May 13, 1889, recognizing this state of things, empowered the board of managers to purchase land outside the city, in such quantity as to enable them to provide for their wards the helpful and elevating effects of family and home life, and to "remove the institution, or any department thereof," to the land so purchased. This land which it is sought to burden with taxes was purchased, under the authority of this act, for the use of the male department, which the board of managers are preparing to remove to and permanently locate upon it. The female department, as we understand, remains for the present, as now located, in Philadelphia. The two departments, though separated by a county line and some miles of distance, will nevertheless constitute one whole under the same management and devoted to the same work, as truly as when enclosed within the same wall in the city. Together they will constitute the actual plant used in the reformatory work for which the House of Refuge was organized; and, looked at from the property point of view, they are the House of Refuge. In the male department, located in Delaware county, the boys will be trained to labor on the lines best suited to their condition and strength. Some will learn trades in the shops; some will learn farming and gardening in the open air. Both the shops in which and the soil upon which their labor is done, being part of the reformatory plant, and actually devoted to the proper work of the institution, will be exempt from taxation, because forming part of the House of Refuge, as truly as the dormitories or the rooms used for confinement.

The learned judge of the court below was misled by a supposed analogy between this case and that of Wagner Free Inst. v. Philadelphia, 116 Pa. 555 [s. c. 132 Pa. 612]. In that case, the institute owned a building in which its library and cabinet were kept, and which was devoted to the proper work of the institute. This building was exempt from taxation. It had other real estate in the hands of tenants, producing rent

in the same way that the real estate of any other holder is made to be productive. These other buildings were not a necessary part of the plant, nor devoted to the use of the institution in the prosecution of its work. They were therefore taxable, as any other income-producing real estate would be. The property which the authorities of Delaware county seek to tax in this case is not held for rent. It is not income-producing in any proper sense, but it is in the actual use of the board of managers and devoted absolutely to the purposes of the House of Refuge, as part of the plant on and by means of which its work is carried on. It is therefore exempt from taxation.

The decree of the court below is reversed and set aside, and the injunction prayed is awarded; the costs of this appeal to be paid by the appellee.