The People of the State of New York ex rel. Buffalo Burial Park Association, Appellant, *v.* Frank C. Stilwell et al., as Assessors of the Town of Tonawanda, Respondents.

1. Tax — Certiorari to Review Assessment — Rules of Pleading Applicable to Petition and Return. In a proceeding by certiorari to review an assessment of real estate by town assessors the petition of the relator is the complaint and the return of the assessors is the answer, and the general rules of pleading are applicable thereto. Under these rules the allegations of the petition are controverted or put in issue only by a general or specific denial, and a material fact alleged is not controverted or put in issue by a statement inconsistent with the facts alleged in the petition or from which a denial may be implied or inferred. An allegation, therefore, in the petition that land assessed is actually used and occupied for cemetery purposes and is exempt from taxation is not controverted by statements in the return inconsistent therewith or from which a denial may be implied or inferred, and in such a case it is error for the court to dismiss the writ.

2. Assessment against Lands Alleged to Be Devoted to Cemetery Purposes. Assuming, however, the truth of every thing stated in the return the fact that a portion of the cemetery was occupied by a tenant, does not necessarily show that the land was not devoted to cemetery purposes, and, hence, was taxable, in the absence of evidence as to the nature and character of the tenant's possession.

3. Insufficient Description in Assessment Roll. A description of the land assessed "Part lot thirty-five, one hundred and twenty-seven acres," is insufficient, where the land was part of one hundred and sixty-three acres owned by the relator, which was a part of lot number thirty-five in township number twelve, range eight, of the Holland Land Company's survey, containing about five hundred acres, and, therefore, there is no identification of the particular one hundred and twenty-seven acres assessed.

*People ex rel. Buffalo Burial Park Assn.* v. *Stilwell*, 119 App. Div. 913, reversed.

(Argued December 3, 1907; decided December 20, 1907.)

Appeal from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 1, 1907, which affirmed an order of Special Term dismissing a writ of certiorari to review an assessment for taxation of real property of the relator.

The facts, so far as material, are stated in the opinion.

*Frank C. Ferguson* for appellant. In a certiorari proceeding under the Tax Law, such as this is, the allegations of the petition not denied must be taken as true, and the allegations denied by the return must be taken as merely put in issue by such denial. (*People ex rel. M. R. Co.* v. *Barker,* 152 N. Y. 417; *People ex rel. C. L. Co.* v. *Feitner,* 81 App. Div. 118; *People ex rel. B. Mfg. Co.* v. *Wells,* 84 App. Div. 330.) The land is not taxable. Chapter 310 of the Laws of 1879 especially exempts it. (*Oakland Cemetery* v. *City of Yonkers,* 63 App. Div. 448; 182 N. Y. 564; *Matter of W. P. P. Church,* 112 App. Div. 130; *People ex rel. St. Patrick's Cath.* v. *Davren,* 41 N. Y. S. R. 779; 131 N. Y. 601; *Matter of Mayor, etc.,* 118 App. Div. 874; *People* v. *Quigg,* 59 N. Y. 83.) The assessors had no jurisdiction to assess the land by the new assessment made August 23, 1906, and that

assessment is wholly void. (*People* v. *Forrest*, 96 N. Y. 544; *Sanders* v. *Downs*, 141 N. Y. 422; *Mygatt* v. *Washburn*, 15 N. Y. 316; *Clark* v. *Norton*, 49 N. Y. 243; *Westfall* v. *Preston*, 49 N. Y. 349.) Both the old and the new assessments are fatally defective by reason of the failure to describe the land in a way sufficient to identify it. (*Zink* v. *McManus*, 121 N. Y. 259; *People* v. *Banfield*, 36 Misc. Rep. 13; *City of Rochester* v. *Farrar*, 44 Misc. Rep. 394; *Matter of N. Y. C. & H. R. R. R. Co.*, 90 N. Y. 342; *Tallman* v. *White*, 2 N. Y. 70; *Lawton* v. *City of New Rochelle*, 114 App. Div. 883; *Matter of N. Y. C. & H. R. R. R. Co.*, 70 N. Y. 191.)

*Sherman S. Jewett* for respondents. No material facts were in dispute; therefore, no occasion for taking testimony or referring the case arose. It follows that the relator is not entitled to a hearing. (*People ex rel. R. L. Co.* v. *Feitner*, 65 App. Div. 224; *People ex rel. Thompson* v. *Feitner*, 61 App. Div. 117; *People ex rel. Spier* v. *Tax Comrs.*, 28 Misc. Rep. 591; *People ex rel. Vil. of Brockport* v. *Sutphin*, 166 N. Y. 163; *People ex rel. R. S. Co.* v. *Wemple*, 138 N. Y. 582; *People ex rel. P. P. Co.* v. *Martin*, 142 N. Y. 228; *People ex rel. W. E. Co.* v. *Campbell*, 145 N. Y. 587; *People ex rel. Sims* v. *Fire Comrs.*, 73 N. Y. 437; *People ex rel. M. R. Co.* v. *Barker*, 152 N. Y. 417; *People ex rel. B. I. Co.* v. *Barker*, 155 N.Y. 322.) No exemption can be claimed by relator for the tract of 127 acres for the reason that it was not actually used and occupied exclusively for burial purposes. (*Matter of Lampson*, 161 N. Y. 511; *Matter of Huntington*, 168 N. Y. 399; *Pratt Institute* v. *City of New York*, 183 N. Y. 151; *People ex rel. Catholic Union* v. *Sayles*, 32 App. Div. 203; *People ex rel. Y. M. C. A.* v. *Sayles*, 32 App. Div. 197.) The assessment against Buffalo Burial Park Association was not a new assessment, but merely a revision of the assessment against Elmlawn Cemetery and was perfectly legal. (*People ex rel. McShane* v. *Barker*, 23 App. Div. 530; 155 N. Y. 665; *People ex rel. B. & S. L. R. R. Co.* v. *Barker*,

48 N. Y. 70; *People ex rel. R., W. & O. Ry. Co.* v. *Jones*, 43 Hun, 131; *People ex rel. R., W. & O. Ry. Co.* v. *Haupt*, 104 N. Y. 337.) The description is sufficient to enable relator to know which portion was taxed. It is the method customary in assessing farm properties and relator cannot claim to have been injured. (*People ex rel. Y. M. C. Assn.* v. *Sayles*, 32 App. Div. 197; *People ex rel. Catholic Union* v. *Sayles*, 32 App. Div. 203; 157 N. Y. 679; *People ex rel. Hutchinson* v. *O'Brian*, 53 Hun, 589; *Dike* v. *Lewis*, 2 Barb. 347.)

O'Brien, J. This was a proceeding by certiorari under the statute to review an assessment of the relator's real estate made by the assessors of the town of Tonawanda. On griev ance day the relator, a cemetery association, appeared by attorney before the assessors and requested that the tax assessed against it be canceled on various grounds, among others that the property taxed was by law exempt from taxation and not properly described; that the assessment was made against the Elmlawn Cemetery as the owner, when in fact the land assessed was owned by the relator. After hearing these objections the assessors on a subsequent day cor rected the assessment by substituting the relator as the owner of the land, and changing the form of the assessment by transferring it to that part of the roll prepared for assessments against non-resident owners of land, the relator's principal office not being situated within the district over which the assessors had jurisdiction, but they refused to cancel the assessment.

Thereupon the relator presented to the court at Special Term a petition praying that a writ of certiorari issue to review the action of the assessors. The assessors made return to the writ, in which there is not to be found any general or specific denial of the material facts stated in the petition, but it contains affirmative allegations that, if true, are inconsistent with and contradictory in some respect of material facts stated in the petition. The learned judge at Special Term, assuming that the facts stated in the return were conclusive, or at least

the true facts, dismissed the writ without taking any proof in regard to the matters alleged in the petition and return. The Appellate Division unanimously affirmed the order, and from this affirmance the case comes here. The relator's real estate consisted of one hundred and sixty-three acres in one body, and the assessment was of one hundred and twenty-seven acres. This action is based upon the fact as claimed that the balance of the one hundred and sixty-three acres was actually plotted and occupied by graves and monuments such as are usually found in cemeteries. In other words, it was held that the one hundred and twenty-seven acres were not used or occupied by the cemetery and, therefore, were taxable.

The petition alleges "that all of the said land is actually used and occupied for cemetery purposes and is exempt from taxation under the laws of the state of New York." It was further alleged by the assessors in their return to the writ that only about thirty acres of the tract had been inclosed as a cemetery and only that number of acres were being improved, graded, developed, embellished or used for cemetery and burial purposes. It was further alleged that the assessors had been informed that the one hundred and twenty-seven acres were occupied at one time by a man named Gordon, who was then paying to the owners a rental for the use of the land, and was using the same for farming and other domestic purposes and not as a cemetery or place of burial; that the assessors and supervisor of the town referred the question to the state board of tax commissioners for instructions as to whether said one hundred and twenty-seven acres not used for burial or cemetery purposes, and from which rent was received and income derived, should be classed as exempt from taxes, or whether the same was subject to taxation; and that said board instructed the assessors and supervisor that the land in question not used for burial or cemetery purposes, and from which rent was received and income derived, was subject to taxation and should be taxed upon their rolls; that these instructions were entirely verbal, no part of which had been reduced to writing so far as

defendants had any knowledge. It was further alleged that one Brennan was then and for some time past had been the occupant and in possession of the one hundred and twenty-seven acres, and that he had stated to two of the assessors that he paid rent for the use of the same, and thereupon the assessors entered the land upon the assessment roll as taxable real estate. The return further states that on grievance day the attorney who appeared for the relator before the assessors had filed with the board a statement in writing making objections to the assessment, and that the assessors understood from him that the one hundred and twenty-seven acres were rented for one hundred and twenty-five dollars, and that the attorney then and there admitted that such was the fact; that none of the proceedings of the assessors was reduced to writing, and the questions raised by the attorney for the relator were thereupon postponed until the next grievance day, which was August 22nd, 1906. On that day the attorney appeared before the assessors and filed with them a verified statement in support of his contention, and that on that occasion he also admitted that the one hundred and twenty-seven acres were rented for the sum of one hundred and twenty-five dollars; and that thereupon the roll was corrected by striking out the former assessment of the property and the same was assessed to the relator. There were no other allegations in the return that are material to the decision of the question involved in the appeal.

The assessors had no power to make a new assessment on grievance day. They had power to reduce assessments already made. I assume that they had some power with respect to the correction of names and perhaps other matters, and if the assessment in question is to be deemed a new assessment and not the correction of an old one, the assessors exceeded their powers. I do not think it is necessary to pass upon that part of the relator's contention. I shall assume, without deciding, that the changes which the assessors made in the form of the assessment on the last grievance day can be defended, and if there were no other questions in the case

the court would be disposed to uphold the action of the assessors if fairly possible; but the appeal presents other questions that seem to me to be of more importance.

There can be no doubt that the lands of a cemetery association actually used and occupied for cemetery purposes are exempt from taxation under chapter 310 of the Laws of 1879, and also under section 4 of the Tax Law. The difficulty in this case is that no facts have been found by the learned court below, and we cannot know whether in fact the relator has leased a part of the land for farming purposes, or other purposes foreign to its use as a burial place or cemetery. If it is true, as the relator has alleged in its petition, that the whole tract, including that part embraced in the assessment, is devoted to cemetery purposes, then the assessment was not authorized. The first difficulty that the respondents have to overcome is a question of pleading. This proceeding is under the statute and is substantially a new trial of the things decided by the assessors. The petition is the complaint and the return is the answer, and the general rules of pleading are applicable to such a case.

One of these rules has been stated in a recent case in this court: "It is a settled rule in the construction of pleadings that a material fact distinctly alleged in the complaint is not controverted by stating the same fact in the answer in some other way or by giving a version of the transaction inconsistent with the allegation in the complaint. The allegations of the complaint are controverted or put in issue only by a general or specific denial. A material fact alleged is not controverted or put in issue by a statement inconsistent with the facts, or from which a denial may be implied or inferred." (*Rodgers* v. *Clement*, 162 N. Y. 428.) The cases cited in the opinion to sustain these propositions seem to be quite clear and conclusive. Within this rule the assessors have not denied the allegations of the petition, and hence, according to the strict rules of pleading the facts alleged are admitted. That an issue in a proceeding of this kind cannot be raised except by complying with the general rules of pleading seems to me

1907.] People ex rel. Buffalo B. P. Assn. *v.* Stilwell. **291**

N. Y. Rep.]     Opinion of the Court, per O'Brien, J.

to follow from the fact that this court and other courts have held that pleadings are essential to the determination of the controversy and what constitutes the pleadings in such a case has been pointed out. (*People ex rel. Manh. R. Co.* v. *Barker*, 152 N. Y. 417, 431; *People ex rel. Citizens' L. Co.* v. *Feitner*, 81 App. Div. 118; *People ex rel. Bibb Mfg. Co.* v. *Wells*, 84 App. Div. 330, 332, 333.) The assessors, therefore, failed to tender an issue upon the most important question of fact in the case. The return of the assessors in such a case is not conclusive. The office of the return in such a case is to present an issue for the court to try. In the face of the facts stated in the petition, the learned court at Special Term was in error in assuming that the real facts of the case were embraced in the return. It will be seen by reading the return that nearly all of its allegations are based upon hearsay, and very few, if any, material facts are positively averred. It follows that the writ should not have been dismissed, but the issue, if any, tendered by the assessors should have been tried or referred as the statute prescribes. In no other way could the rights of the parties be determined.

But if it be assumed for the purpose of the argument that everything stated in the return is to be taken as true, these facts do not necessarily show that the land was taxable, or that it was not devoted to cemetery purposes within the fair meaning of the law. The cemetery in question was, to use a business expression, a going and growing concern. It was not all occupied by burial plots or by the graves of the dead. It may not be fully occupied for such purposes for many years to come. Of course it is not necessary that the cemetery should be filled with graves in order to be entitled to the exemption, and the mere fact that Brennan had leased an unoccupied portion of the cemetery for the sum of one hundred and twenty-five dollars would not necessarily deprive the relator of the exemption. If, for example, he had paid that sum of money for the right to cut and carry away the grass from the unoccupied land, and the money paid by him went into the relator's treasury to be used for taking care of the ground

already occupied, that would not change the character of the land as cemetery land, nor deprive the corporation of the benefit of the exemption. We do not know what the real facts are in regard to this leasing and occupation, but we do know that real property which has been assessed for nearly twenty thousand dollars is said to be rented for one hundred and twenty-five dollars. The inference is that the leasing and occupation is really for the purpose of taking care of the whole tract. Of course, if the relator has leased the land for farming purposes and it is used in the ordinary way as farmers use their lands, or if it should be leased for building or manufacturing purposes, the case might be different, and under such circumstances the land ought to be taxed and would be taxable. Hence, the real facts that relate to the leasing and occupation must be found before we can say that the relator is not entitled to the exemption. It does not appear that there is any house or other building on the land, nor whether Brennan's occupation or possession is actual or constructive.

The relator had no authority to purchase, acquire or hold land for other than cemetery purposes; and it has been held that when such an association has once acquired real estate for burial purposes the lands are exempt from the moment when the title becomes vested in the corporation, and they continue exempt so long as the corporation exists, although no dead bodies be buried therein. It would seem from this statement of the law that the whole of the relator's land was exempt from taxation, unless some portion of it has been permanently abandoned to some other use than that for which it was originally acquired. The mere fact that it is in receipt of some small revenue for the temporary use of a portion of it is not inconsistent with the purpose of holding and preparing the land for burial purposes. (*People ex rel. Oak Hill C. Assn.* v. *Pratt*, 129 N. Y. 68.)

If the lands in question are taxable at all it seems to me that they are not properly or sufficiently described. In case of a sale for taxes the land as described in the assessment roll could not be very well identified and the one hundred and

twenty-seven acres separated from the whole tract. The only description of the land assessed is "part lot thirty-five, one hundred and twenty-seven acres." It would seem to be impossible from this description to identify and describe in a conveyance the particular one hundred and twenty-seven acres which the relator owns. The one hundred and sixty-three acres are a part of lot number thirty-five in township number twelve, range eight, of the Holland Land Company's survey. That whole lot is said to contain about five hundred acres of land. There is no identification of the particular one hundred and twenty-seven acres in question. It might refer to any lot thirty-five, and a conveyance by such a description upon a tax sale would be void for uncertainty. (*Zink* v. *McManus*, 121 N. Y. 259, 265; *Matter of N. Y. C. & H. R. R. R. Co.*, 90 N. Y. 342; *S. C.*, 70 N. Y. 191, 193.) The assessors should have given such a description of the land as to enable a purchaser upon a tax sale to locate it. For these reasons I think that the writ was improperly dismissed and that the relator was entitled to have the facts alleged in the petition determined in the usual way. The objections to the assessment were of such a character as to require the court to proceed and determine the truth of the matters in controversy, and it could not be assumed that the statements in the return were conclusive as to the facts or the law. At most the only office of the return in such a case is to present an issue for trial.

The orders of the Appellate Division and the Special Term should be reversed and the case remitted to the Special Term for further hearing, with costs in all the courts to abide the event.

Cullen, Ch. J., Edward T. Bartlett, Haight, Vann, Hiscock and Chase, JJ., concur.

Ordered accordingly.