## Pomfret Manor Cemetery Co. v. City of Sunbury.

*Taxation—Exemption—Cemeteries—Profits—Use of corporate property—Wages—Interest on indebtedness—Act of April 9, 1921.*

1. Under the Act of April 9, 1921, P. L. 119, a cemetery company, organized as a corporation of the first class, which is exclusively engaged in the business for which it was organized and which has not made a profit therefrom, is exempt from taxation upon such of its property as is not used or held for private or corporate profit.

2. Salaries and compensation for labor are not profits. The fact that the principal stockholders receive monthly salaries, does not indicate that the company is being operated for profit. This is particularly true where it appears that the salaries, if at all unreasonable, are unreasonably low.

3. The holder of certificates of indebtedness may receive the interest thereon without subjecting himself to the charge of receiving profit.

4. The maintenance of a house upon lands owned by the company for the use of its sexton, free of rent, and the use of part of its lands as a nursery to grow plants and trees for ornamentation, are proper uses of cemetery property incidental to its convenient management. Where such use of the corporate property reduces expense, but does not yield a profit, it does not change the character of the corporation or defeat its right to exemption from taxation.

5. Where grass and weeds are cut as an indispensable requisite to proper maintenance of the cemetery property, and there is no market for products of that character, a stockholder may use them for feeding livestock without subjecting himself or the corporation to the charge of receiving a profit from the corporate property.

Appeal from decision of Board of Appeals and Revision of Taxes in the City of Sunbury. C. P. Northumberland Co., May T., 1923, No. 25.

*G. B. Reimensnyder* and *T. J. Purdy*, for plaintiff.

*W. J. Sanders*, City Solicitor, for defendant.

STRAUSS, P. J., and LLOYD, J., July 9, 1923.—This is an appeal by the Pomfret Manor Cemetery Company from the decision of the Board of Appeals and Revision of Taxes of the City of Sunbury in fixing the valuation of its property for purposes of taxation. The request for findings of fact and conclusions of law as submitted by the appellant, the cemetery company, fully cover the dispute in this appeal. We, therefore, deem it unnecessary to formulate

any conclusions of our own. Exclusive of the first conclusion of law, we adopt the findings of fact and the remaining conclusions of law as found in the appellant's request.

### Appellant's request for findings of fact.

1. That the Pomfret Manor Cemetery Company is a corporation of the first class, duly organized and existing under the laws of Pennsylvania, for the purpose of laying out, improving and maintaining grounds for a cemetery, and for the disposing of lots therein for purposes of sepulture alone. That it is seized of the legal title to the real estate, and is the owner of the personal property absolutely. Answer. Affirmed.

2. That the evidence shows that the whole proceeds and income of the said company have been devoted to the organization and maintenance of the cemetery and to increasing its facilities, and to no other or ulterior purpose. Answer. Affirmed.

3. That the Pomfret Manor Cemetery Company does not own any surplus land or land unnecessary to its maintenance and its proximate development. Answer. Affirmed.

4. That the dismemberment of the cemetery company's property by the sale of any lands now held would restrict its necessary development and impair its usefulness as such. Answer. Affirmed.

5. That the lands designated as four acres "laid out in lots and not occupied" have been laid out in conformity to the general plan of the cemetery and are immediately necessary for its use and development, and that the lands designated as six acres are required for exits, ornamentation and future development. Answer. Affirmed.

6. That the sexton's house included in the six acres is both convenient and necessary to the operation of the property as a cemetery. Answer. Affirmed.

7. That the right of sepulture on lands designated as "twelve acres improved and occupied" has been sold to persons and families for the perpetual burial of the dead, and such lands are now devoted to such use, almost all of which are covered with graves, tombstones and monuments. Answer. Affirmed.

### Appellant's request for conclusions of law.

1. That lots in a cemetery, or rights of sepulture therein, sold to any person or family by an incorporated cemetery company, within any common enclosure made by such company, for the perpetual burial of the dead, are exempt from taxation, under the Act of April 5, 1895, which has not been repealed. Answer. Not applicable to these proceedings.

2. That cemetery lots laid out and improved, but not yet sold or used for sepulture and other ground within cemetery confines, necessary or convenient to the use of such cemetery and necessary to the increasing of the facilities and efficiency thereof, where such cemetery or burial-ground is "not used or held for private or corporate profit, the entire income being applied to the support of and to increase the facilities thereof, and the legal or equitable title thereto is in such cemetery company, such property is, under the Act of April 9, 1921, exempted from every city or county tax." Answer. Affirmed.

3. That a cemetery company organized as a corporation of the first class, operated without private or corporate profit, having expended its entire receipts from all sources, except funds devoted to a trust for perpetual maintenance, to the support of and to increasing the efficiency and facilities

4 D. & C.

Pomfret Manor Cemetery Co. v. City of Sunbury.

thereof, and being seized of the legal title to the real estate, and owning the personal property absolutely, is not subject to taxation for county or city purposes. Answer. Affirmed.

4. That the plaintiff company is not subject to taxation and is, therefore, exempt from the assessments made by the city assessor and the city board of appeals. Answer. Affirmed.

The appellee has not submitted any request for either findings of fact or conclusions of law.

## Discussion.

The legislature, in order to give effect to the provisions of section 1 of article IX of the Constitution of Pennsylvania, wherein it is provided that "the general assembly may, by general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, and institutions of purely public charity," enacted considerable legislation relating to property within the contemplation of these exemptions. It would be purposeless to point out the several acts in which the legislation is reflected. It is sufficient to say that all the legislation prior to 1919, and relevant to our present inquiry, was repealed by the Act of July 17, 1919, P. L. 1021. This latter act was in turn amended by the Act of April 9, 1921, P. L. 119. Hence, the appeal before us is to be decided under this act, which provides as follows: "That all churches, meeting-houses or other regular places of stated worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same, all burial grounds not used or held for private or corporate profit, all hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by the public or private charity; provided, that the entire revenue derived by the same be applied to the support of and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose; and all school-houses belonging to any county, borough or school district, all court-houses, jails, poorhouses and all other public property used for public purposes, with the ground thereto annexed and necessary for the occupancy and enjoyment of the same, be, and the same are hereby, exempted from all and every county, city, borough, township, bounty, road, school and poor tax; provided, that all property, real or personal, other than that which is in actual use and occupation for the purposes aforesaid, and from which any income or revenue is derived, shall be subject to taxation, except where exempted by law, for state purposes, and nothing herein contained shall exempt same therefrom: And provided, that all property, real and personal, in actual use and occupation for the purposes aforesaid, shall be subject to taxation, unless the person or persons, association or corporation so using and occupying the same shall be seized of the legal or equitable title in the realty and possessor of the personal property absolutely."

Taxation is the rule: Exemption the exception. And he who claims exemption must bring himself within the exempted class. The burden is, therefore, upon the appellant to show, first, that its burial grounds are "not used or held for private or corporate profit;" second, that the "entire revenue derived by the same be applied to the support of and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose;" third, that it is "seized of the legal

or equitable title in the realty and possessor of the personal property absolutely." We shall consider the several propositions in the order as above presented.

The appellant is a Pennsylvania corporation, duly organized by this court Aug. 4, 1870, by the name and style of Mt. Pleasant Cemetery Company of Sunbury, Pa. This title, by order of this court on June 9, 1873, was changed to Pomfret Manor Cemetery Company, the present appellant. The preamble to this charter is a declaration of the highest of Christian purposes as the motives for the founding of this cemetery company. Its object, as stated in article II in this charter, is to "establish a cemetery or burial ground—to lay out, improve and maintain the same, and to dispose of lots therein for the purpose of sepulture alone." Nowhere within the four corners of the charter can it be said that its burial grounds are held for private and corporate profit. From the declared motives, the mode of incorporation and its objects, it is a corporation of the first class and one not for profit. We submit, however, that the real status of this corporation is to be determined not by its declaration, but by its action—the purity and unselfishness of motives are important only in the moral aspects of the acts. Has it played true to the purposes of its incorporation? Does its continued existence for more than fifty years show that its declared motives are a subterfuge, and that they have been subverted to the ulterior purposes of private gain, and that its burial ground is now being used for profit? The answers to these questions must be sought in the testimony. In Lepore *v.* The Twin Cities National Building and Loan Ass'n, 5 Pa. Superior Ct. 276, 279, the court quotes with approval the definitions following: " 'Profits' are defined to be 'the receipts of any enterprise or business exceeding the expenses incident to it:' 19 Am. & Eng. Ency. of Law, 257. 'The word 'profits' has a fixed and definite meaning, and imports the net amount made after deducting any proper expenses incident to the business.' And, again, it is said: 'The usual, ordinary and correct meaning of the word 'profits' is the excess of receipts over expenditures:' 19 Am. & Eng. Ency. of Law, 258."

The positive testimony, in fact, the only testimony before us, is that this corporation has never paid nor declared any dividend, that its necessary expenses are in excess of its income, that the interest on its certificates of indebtedness has not been paid, and that it is largely in debt. But counsel for the appellee contends that W. H. Druckemiller, who, with his two sons, owns practically all of its stock, receives unreasonable sums by way of salaries, and thereby receives by that name what otherwise should be denominated dividends, and that the deficit is caused thereby. This contention is just what it purports to be—a contention. It is absolutely without any foundation in fact. The testimony shows that W. H. Druckemiller, as secretary-treasurer, charged against the corporation $100 per month; that for thirty-three years he performed the services as such and not only did not receive any actual pay therefor, but during that whole period of time was not paid anything for the interest due on the certificates of indebtedness which he holds; that his son, who is a graduate civil engineer, acting as clerk, book-keeper and civil engineer, was paid $160 per month. If we were inclined to declare that these salaries are unreasonable, we should be obliged to do so on the ground that they are too low. They are proper charges against the income, not as profit, but as wages. To hold otherwise would be to declare that the wages of the caretaker, the gravediggers, the superintendent, fence builders and other like employees could not be charged as expenses incident to the maintenance of the cemetery. Com-

4 D. & C.

pensation for labor is not profit. The terms are not synonymous, and they should not be used interchangeably.

In Peoples v. San Francisco Sav. Union, 72 Cal. 199, 13 Pac. Repr. 498, it was said: "Profit, as distinguished from the wages of labor, implies the net return on the capital or stock employed, after deducting all the expenses, including not only the wages of those employed by the capitalist, but the wages of the capitalist himself for superintending the employment of his capital stock."

Moreover, the testimony shows that the deficit of this corporation is $28,000, exclusive of the salaries herein complained of.

The holder of the certificates of indebtedness may receive the interest thereon without subjecting himself to the charge of receiving profit.

"Net earnings are, properly, the gross receipts, less the expenses of operating the road to earn such receipts. Interest on debts is paid out of what thus remains, that is, out of the net earnings. When all liabilities are paid, either out of the gross receipts or out of the net earnings, the remainder is the profit of the shareholders:" St. John v. Erie Railroad Co., 10 Blatchf. 271, 21 Fed. Cas. No. 12, 226.

Counsel for appellee contends that the land is taxable because it is not necessary for the operation of the cemetery and is not part of the laid out portion.

This contention is without any force also, for the reason that the positive and unassailed testimony in this appeal is that all of the land is required for the maintenance of this cemetery for the purpose of furnishing lateral support to the higher portions thereof or for purposes of ornamentation and for the reasonable requirements of the future.

It is further contended that the land is being used for profit for the following reasons: First, because a dwelling-house for the use of the sexton is erected thereon. Second, because hay was mown from said land and used to feed the dairy stock of W. H. Druckemiller. Third, because a nursery is maintained on part of the vacant land, from which ornamental trees are sold to lot owners and to beautify the cemetery.

The first and third of these reasons raise the same questions, and we shall consider them together. The testimony shows that a dwelling-house is erected upon the grounds for the convenience of the working superintendent, who occupies the same free of rent. It also appears from the testimony that a portion of the grounds is used as a nursery for the propagation of plants and trees, which are generally used for purposes of ornamentation, but some few of which were sold and the proceeds thereof placed in the general fund and used for the purposes of upkeep and maintenance. It is to be observed that the business complained of is conducted in the management of the cemetery, is directly related thereto, and is incidental to the reduction of expenses. The exact question, to wit, whether, under the facts as thus presented, burial grounds are held to be used for profit, has not been decided by the appellate courts of this State in any case brought to our attention; but in the following cases the Supreme Court, in construing the phrase "public charity" under similar acts exempting institutions founded, endowed and maintained by public and private charity, have held that property used directly for the purposes and in the operation of charity is exempt, though it may be used to yield revenue and thereby reduce expenses, provided the income does not exceed the amount necessary for self-support.

In House of Refuge v. Smith et al., 140 Pa. 387, land was cultivated by the inmates and the sale of the products of the farm used to defray a part of the expenses of the institution. It was held that "the land so used is not income-producing in any proper sense, and being in the actual use of the managers and devoted absolutely to the purposes of the institution as a part of the plant on and by means of which its reformatory work is carried on, it is exempt from taxation under the Act of May 14, 1874, P. L. 158."

In Philadelphia v. Pennsylvania Hospital for the Insane, 154 Pa. 9, we quote from the syllabus as follows:

"On a municipal claim for water-pipe filed against a portion of the land owned by a hospital for the insane, it appeared that the managers of the hospital maintained upon the land in question a building reserved exclusively for the use of patients paying a higher rate than any others. The object of the trustees in maintaining this department was to make profit, but no actual profit was realized after taking into consideration the value of the ground and improvements and the cost of maintenance. The apparent profit was used in extending the hospital's capacity for good among the destitute members of the community, and no portion of it enured to the benefit of any person concerned in administering the charity: Held, that the property was exempt from taxation, and that the municipal claim could not be sustained."

In Pennsylvania Hospital v. Delaware County, 169 Pa. 305, the hospital owned several properties which were worked for profit, but were bought and used as part of the hospital plant, and in this case, on pages 308 and 309, the court said:

"On the general question of what part of the property of a charity is exempted from taxation, a plain distinction is to be observed in all our cases. Property which is not used directly for the purposes and in the operation of the charity, but for profit, is not exempt, and the devotion of the profit to the support of the charity will not alter this result. Of this class of cases American Sunday School Union v. Philadelphia, 161 Pa. 307, is the exemplar and authority. But property which is used directly for the purposes and in the operation of the charity is exempt, though it may also be used in a manner to yield some return and thereby reduce the expenses: Donohugh's Appeal, 86 Pa. 306; Philadelphia v. Pennsylvania Hospital, 154 Pa. 9; House of Refuge v. Smith, 140 Pa. 387. . . .

"This case, therefore, belongs to the second class above mentioned, where the property is used directly for the purposes and in the operation of the charity, though it is managed at the same time so as to secure some return and thus keep down the expenses. It may be that the acreage is larger than is necessary or really useful for the number of patients which the other facilities of the hospital enable it at present to treat there, but as the fact is not found by the learned court below and is not clear on the evidence, we do not assume it as true."

Reasoning by analogy, we reach the conclusion that the property of the appellant does not lose its character as burial-grounds not held or used for profit merely because it used its property in the manner above indicated.

The following cases, though of foreign jurisdiction, are in point:

"An exemption of cemeteries from taxation will apply to land acquired and set apart for burial purposes, and either actually in use therefor, or intended so to be used:" 37 Cyc., 945; 85 N. E. Repr. 755.

"Where a cemetery association does not use its unoccupied lands as a business or money-making proposition, but endeavors to avoid an unnecessary expenditure for care and upkeep, at the same time reaping such incidental

4 D. & C.

benefit as might come therefrom by leasing a portion, such portion does not lose its exemption:" 129 N. Y. 68; 118 Mass. 354; 190 N. Y. 284.

"The rule that exemption cannot be claimed in respect to land purchased by owners of a cemetery with the intention of employing it for cemetery purpose at some indefinite future time 'does not mean that only such land is exempt as is actually occupied by burial-plots and graves:' " 37 Cyc., 946-26; 190 N. Y. 284; 83 N. E. Repr. 56, reversing 119 N. Y. App. Div. 913.

"The mere fact that a cemetery association is in receipt of some small revenue for the temporary use of the unoccupied portion of the cemetery does not deprive it of its exemption from taxation, etc.: 190 N. Y. 284; 83 N. E. Repr. 45. In this case the court said: 'The relator had no authority to purchase, acquire or hold land for other than cemetery purposes; and it has been held that when such an association has once acquired real estate for burial purposes, the lands are exempt from the moment when the title becomes vested in the corporation.' 'The mere fact that it is in receipt of some small revenue for the temporary use of a portion of it is not inconsistent with the purpose of holding and preparing the land for burial purposes:' " 129 N. Y. 68; 29 N. E. Repr. 7.

"Conducting a greenhouse on cemetery property for the purpose of growing plants and flowers to beautify the grounds is not a use for other than cemetery purposes, notwithstanding a small surplus has been sold for the benefit of the association:" State v. Lakewood Cemetery, 101 N. W. Repr. 161.

As to the second reason, it appears from the testimony that the hay herein referred to is nothing more than the clippings of grass and weeds by mowing, indispensable and requisite to a proper maintenance of the cemetery. Nor does the contention of counsel for appellee, although there is no evidence in support of it, that W. H. Druckemiller fed the same to his cattle add any weight to the reason. For it is a well-known fact that for such refuse there is no market, and in the interest of econmy that use of it is to be preferred to consigning it to the waste pile. The reason is too frivolous to command further consideration.

We next proceed to a consideration of the question, Was the entire revenue derived from the cemetery applied to its support and to increase the efficiency and facilities, the repair and necessary increase of ground and buildings thereof, and for no other purpose? From what is hereinbefore said this question could fairly be answered in the affirmative. But, in addition thereto, the entire testimony on this branch of the appeal, both upon the part of the plaintiff and defendant, is that the entire revenue derived from the cemetery grounds is applied conformably to the provision of said Act of 1921.

The final question raised by the appeal is, Is the appellant seized of the legal or equitable title in the realty and possessed of the personal property absolutely?

Counsel for the appellee in his oral agument conceded and in his printed brief says that: "The title to the ground in the occupied land remains in the cemetery company. The necessary license obtains only a license for sepulture." This concession and conclusion is sustained by the evidence. The title to the unoccupied portion of the cemetery and the absolute possession of the personal property are conclusively shown to be in the cemetery company. The question requires no further discussion.

From the conclusions herein reached, we hold that the burial-grounds of the Pomfret Manor Cemetery Company are not used or held for private or corporate profit; that the entire revenue derived from the same is applied to the support of and to increase the efficiency and facilities thereof, the repair

and the necessary increase of grounds and buildings thereof, and for no other purpose; that the said cemetery company is seized of the legal title in the realty and possessor of the personal property absolutely, and that the said company is exempt from taxation under the Act of April 9, 1921, P. L. 119.

And now, July 9, 1923, the appeal of Pomfret Manor Cemetery Company from the action of the Board of Appeals and Revision of Taxes of the City of Sunbury on the assessment of its property in said City of Sunbury is sustained and the said assessment is hereby stricken off.

From C. M. Clement, Sunbury, Pa.